RUTLEDGE & KILPATRICK REALTY COMPANY, Respondent, v. SHAW F. NEELY, Appellant.

St. Louis Court of Appeals, March 17, 1903.

Agency: REAL ESTATE AGENT: DOUBLE AGENCY: COMMISSION. A real estate agent who represents both the vendor and vendee in an adverse transaction, without disclosing his double agency, can not recover a commission for the sale of real estate.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

AFFIRMED.

*Finkelnburg, Nagel & Kirby* for appellant.

(1) When an agent is disloyal to his principal's service, he forfeits compensation. The evidence of disloyalty in this case would have precluded a recovery even if there had been an employment by defendant. Chapman v. Currie, 51 Mo. App. 40; Smith v. Tyler, 57 Mo. App. 668; Mechem on Agency, secs. 454 and 455. (2) A real estate broker who, without the consent of both parties, represents both in the same transaction, can not recover from either. DeSteiger v. Hollington, 17 Mo. App. 382; Reese v. Garth, 36 Mo. App. 641; Harkness v. Briscoe, 47 Mo. App. 196; Chapman v. Currie, 51 Mo. App. 40; Rosenthal v. Drake, 82 Mo. App. 358; Leathers v. Canfield, 45 L. R. A. (Mich.) 1; Friar v. Smith, 46 L. R. A. (Mich.) 229; Mechem on Agency, sec. 798.

*Thomas G. Rutledge* for respondent.

"It is well-settled law in this State that a real estate broker performs his duty when a purchaser is introduced who is ready, willing and able to buy on the terms authorized by the principal." The owner is certainly liable for commissions when the purchaser or tenant is bound by a written agreement, for breach of which he would be liable. Wetzell v. Wagner, 41 Mo. App. 516; Bell v. Kaiser, 50 Mo. 150; Mechem on Agency, sec. 966; Gerhart v. Peck, 42 Mo. App. 644; Hayden v. Grillo, 35 Mo. App. 653.

GOODE, J.—In this case, which was instituted to recover a commission alleged to be due the respondent for making a lease of appellant's property, the only point made for a reversal of the judgment is that the evidence shows respondent acted as agent for both appellant and his lessees in the transaction. All the declarations of law requested by the appellant, except

Vol 99 app—25

one in the nature of a demurrer to respondent's case, were given by the trial court which, however, found the facts in favor of the respondent.

We have read the evidence and are convinced that appellant's contention that there was nothing on which to base the judgment rendered below, is without merit.

The Rutledge & Kilpatrick Realty Company is a corporation conducting a real estate business in the city of St. Louis. The appellant Neely is a resident of Leavenworth, Kansas, but owns much St. Louis property. The transaction which gave rise to respondent's claim for a commission was the leasing, in 1901, of a lot owned by Neely on Pine street between Seventh and Eighth streets in the city of St. Louis, to two men by the name of Horn, for hotel and restaurant purposes. The contract between the lessor and lessees provided for the erection of a new building on the lot owned by the lessor, the creation of a leasehold for twenty years and the payment to Neely of a rental of five per cent on a ground valuation of $125,000 and six per cent on the cost of the building he was to erect. This rent is to be paid for the first ten years, at the end of which time there is to be a revaluation of the premises in order to fix the rent for the second half of the term. Neely denies positively that he ever employed the Rutledge & Kilpatrick Realty Company to act as his agent in the matter, but his testimony is as positively contradicted by the members of that company.

The evidence on this issue is conceded to be conflicting but appellant contends that the effect of the testimony of the members of the respondent corporation is that if it represented Neely, it likewise represented the Horns and was, therefore, guilty of acting in a dual agency, which precludes it from recovering from Neely for any service rendered to him.

The testimony for the respondent tends to prove that two or three years prior to April, 1901, when the negotiation for the lease began, Neely had requested

it to lease this Pine street property; that Neely came into respondent's business office frequently from time to time and spoke to its officers on the subject, saying he wanted to make a lease for ninety-nine years, would put up a building, asked said officers to find a tenant, and they agreed to look around for one. In the spring of 1901, the Horns were endeavoring to obtain a leasehold between Seventh and Ninth, and Chestnut and Olive streets, in St. Louis, for the purpose of carrying on a hotel and restaurant business. They wanted a building arranged for a restaurant on the first floor with hotel accommodations in the upper stories. The Horns advertised in the newspapers for a lease of that kind and spoke to several real estate agents, including the respondent, telling one of respondent's officers what they wanted and receiving a promise from him to find a suitable building for them if possible. In April, Neely again went to respondent's office and brought up the subject of leasing the Pine street property. He was introduced by Kilpatrick to Bakewell, the treasurer, and Yourtree a salesman of the realty company. A conversation ensued during which Neely said he wanted to lease his Pine street property for ninety-nine years, and Yourtree told him he did not believe the company could effect a lease for so long a time, but if he would fix a shorter time perhaps something could be done for him. Then Yourtree thought of the Horns and their desire to acquire a leasehold in the locality where Neely's property was. Yourtree stated to Neely what kind of a house the Horns wanted and Neely said such a building would be satisfactory to him and that he would rent on terms the same as those heretofore stated. Yourtree then brought Neely and the Horns together, the matter was fully discussed, an arrangement effected by which the Horns were to guarantee Neely to the amount of $12,000, and he was to erect a building of the kind agreed on and give them a lease for twenty years. The officers and employees of the Rutledge & Kilpat-

rick Realty Company drew the various contracts or examined them for Neely, and at his request Yourtree went with him to meet the sureties of the Horns and talk over the business.  At that time the contract had been drawn and Yourtree, thinking it was unnecessary for him to be present at that interview, sought to excuse himself as he was busy, but Neely insisted on his going. After the arrangements had been consummated Neely returned to Leavenworth and while there received a telegram from Richard Horn to come to St. Louis.. Thereupon Neely sent the following telegram:

"Leavenworth, Kansas, May 8, 1901.
Rutledge & Kilpatrick:

"Have telegram from Horn to come to St. Louis. What is up?   Confidential.        S. F. NEELY."

It turned out that the city building commissioner had required a fireproof building to be erected, which was more expensive than the one contemplated and hence would result in an increase in the rent the Horns were to pay.   On this account they were about to back out, but through the efforts of the respondent's employees the difficulty was tided over and the contract remained intact.

Such is the substance of the testimony for the respondent, and appellant contends it conclusively shows a dual agency—that the respondent was acting as much for the Horns as for Neely.   This view of the evidence is strained.   Neely had been talking to the respondent for several years about leasing his Pine street property and they were hunting for some one to lease it.   The mere fact that the Horns spoke to the respondent, among other real estate agents, to find them such a leasehold as they desired, instead of making the respondent the agent of the Horns, enabled it to realize the desire of its patron Dr. Neely to lease his property. If an owner has put a building in the hands of a real estate agent to lease and afterwards some person asks the same agent to find him a building which he may

lease, and thereupon the agent brings the two together and a lease is effected, can it be said the agent was guilty of disloyalty to his original employer? Obviously no such interpretation can be justly put on his conduct; for he has merely availed himself of circumstances that arose to accomplish a business result satisfactory to all parties.

In the particular transaction with which we are at present concerned there were, of course, many details and disputes before the affair was consummated, and the members of the respondent company labored hard to bring Neely and the Horns to an agreement. Perhaps there was evidence on which to base a finding that they sometimes acted in the interest of the Horns instead of Neely; but undoubtedly the evidence did not compel that finding. It was a matter for the court below to decide. The telegram we have quoted, as well as the facts above stated, strongly tend to prove that Neely regarded respondent as his agent and everything the respondent's employees did in the matter is entirely consistent with a finding that they were loyal to Neely and that their labors were directed towards removing such cavils and objections as usually arise in the progress of a business transaction of magnitude, so that the main object of the negotiation might be realized, to-wit, the letting of appellant's property on terms agreeable to both him and the lessees.

In several declarations prepared and requested by the appellant's counsel, the court laid down the law to be that an agent who represented both parties in an adverse transaction without disclosing the double agency, could not recover a commission; further, that even though Dr. Neely employed respondent, if the evidence showed that Horn Brothers also employed it to represent them, respondent could not recover; further, that if the respondent during the negotiations, secretly and without the knowledge and consent of Neely, advised the Horn Brothers against the interest

of appellant and endeavored to obtain concessions from the appellant for the benefit of the Horns, respondent could not recover.

The legal theories of the case were accurately declared and as there was evidence to support the circuit court's judgment, said judgment is affirmed. *Bland,. P. J.,* and *Reyburn, J.,* concur.